# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SANTINO P., by and through his Parent, JOSEPH P.,<br><br>    *Plaintiff,*<br><br> v.<br><br>PENNSYLVANIA DEPARTMENT OF EDUCATION,<br><br>    *Defendant.* | CIVIL ACTION<br>No. 16-5230 |

**PAPPERT, J.**                              June 15, 2017

## MEMORANDUM

This case requires the Court to decide whether a parent who prevailed in a due process hearing against a public charter school can recover attorneys' fees from the Pennsylvania Department of Education when the Department was not a party to that hearing and separately satisfied its obligations under the Individuals with Disabilities Education Act ("IDEA"). The parties stipulated to all facts and filed cross motions for summary judgment. The Court grants the Department's motion for two related reasons: The Plaintiff did not prevail against the Department at the due process hearing and Congress declined to make fee shifting integral to a free appropriate public education under IDEA.

### I.

### A.

IDEA requires states receiving federal funding to make a "free appropriate public education available to all children with disabilities." 20 U.S.C. § 1412(a)(1)(A); *see also Endrew F. ex rel. Joseph F. v. Douglas Sch. Dist.*, 137 S. Ct. 988, 993 (2017);

1

*D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 556 (3d Cir. 2010). A free appropriate public education "includes both 'special education' and 'related services.'" *Endrew F.*, 137 S. Ct. at 994 (citing 20 U.S.C. §§ 1401(26), (29)). IDEA mandates instruction that is "specially . . . designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *D.S.*, 602 F.3d at 556 (quotation and citation omitted); *see also* 20 U.S.C. § 1401(9). Under IDEA, states "must confer an education providing 'significant learning' and 'meaningful benefit' to the child." *Id.* (quoting *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir. 1999)). IDEA thus "ensures that students with special education needs receive the type of education that will 'prepare them for further education, employment, and independent living.'" *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 717 (3d Cir. 2010) (quoting 20 U.S.C. § 1400(d)(1)(A)).

States seeking funding under IDEA must submit a plan of compliance to the Secretary of Education. 20 U.S.C. §§ 1412–14. IDEA then gives the State Education Agency ("SEA")—*i.e.*, the state department of education, *id.* § 1401(32)—the responsibility of apportioning the funds to Local Education Agencies ("LEAs")—*i.e.* school districts or public charter schools, *id.* § 1401(19)(A). *See id.* § 1413(a). "The SEA is responsible for ensuring that LEAs comply with the mandates of the IDEA in providing educational services to those eligible students." *Charlene R. v. Solomon Charter Sch.*, 63 F. Supp. 3d 510, 513 (E.D. Pa. 2014) (citing 20 U.S.C. § 1412(a)(11)(A)). The LEA is the entity that actually provides services to children under IDEA. *Id.*; *see also* 20 U.S.C. § 1414(d)(1)(A). It is the SEA, however, that "retains primary responsibility to ensure that all children with disabilities receive the

education that is their right under the IDEA." *Charlene R.*, 63 F. Supp. at 513; *see* 20 U.S.C. §§ 1412(a)(11)(A), 1413(g)(1); *Kruelle v. New Castle Cty. Sch. Dist.*, 642 F.2d 687, 696 (3d Cir. 1981); *see also Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006); *St. Tammany Parish Sch. Bd. v. State of Louisiana*, 142 F.3d 776, 784 (5th Cir. 1998); *Gadsby v. Grasmick*, 109 F.3d 940, 943 (4th Cir. 1997).

**B.**

IDEA requires states to establish extensive safeguards to ensure all disabled children receive a free appropriate public education. *See* 20 U.S.C. § 1415(a). Three primary mechanisms exist to settle such disputes: a due process hearing, a state complaint and formal mediation.

A due process hearing provides an "opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* § 1415(b)(6)(A). "In Pennsylvania, the Commonwealth's Office of Dispute Resolution ("ODR") is responsible for conducting IDEA due process hearings." *H.E. v. Palmer*, 220 F. Supp. 3d 574, 577 (E.D. Pa. 2016) (citing 22 Pa. Code § 14.162). Any party "aggrieved by" the hearing officer's "findings and decision" may seek review of the decision by filing a civil action in state court or in a district court of the United States. 20 U.S.C. § 1415(i)(2)(A).

Alternatively, parents may file a complaint directly with the SEA. "Upon receipt of such a complaint, the SEA must evaluate the complaint and carry out, as necessary, an independent investigation before reaching a final decision containing findings of fact and conclusions." *R.V. v. Rivera*, 220 F. Supp. 3d 588, 591 (E.D. Pa. 2016) (citing 34

3

C.F.R. §§ 300.151–.153)).  The due process hearing and state complaint process are parallel proceedings, "either of which a parent may opt to pursue in the first instance," however, "the due process complaint procedure takes priority over the state complaint procedure."  *Id.* (citing 34 C.F.R. § 300.152(c)(1) (explaining that an SEA must stay its investigation when a due process complaint is filed)).

Finally, IDEA provides for formal mediation.  States must "ensure that procedures are established and implemented to allow parties . . . to resolve such disputes through a mediation process."  20 U.S.C. § 1415(e)(1).  This process must be voluntary, cannot be "used to deny or delay a parent's right to a due process hearing . . . or to deny any other rights" and must be "conducted by a qualified and impartial mediator who is trained in effective mediation techniques."  *Id.* § 1415(e)(2)(A).

## C.

Separate from the procedural protections described above, IDEA allows prevailing parties the opportunity to recover attorneys' fees.  *See id.* § 1415(i)(3).  That provision provides that in "any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."[1]

Notably, § 1415(i)(2), which provides for court review of a hearing officer's decision, and § 1415(i)(3), providing for fee shifting, "contain separate jurisdictional grants, and the weight of authority holds that they create two distinct causes of action."  *D.G. v. New Caney Indep. Sch. Dist.*, 806 F.3d 310, 317 (5th Cir. 2015); *see Zipperer v.*

---

[1]  IDEA also provides for fee shifting to SEAs or LEAs who prevail when the opposing party filed a complaint or subsequent cause of action that was "frivolous, unreasonable, or without foundation" or if the complaint or subsequent cause of action was "presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation."  20 U.S.C. § 1415(i)(3)(B)(i)(II)–(III).

4

*Sch. Bd.*, 111 F.3d 847, 851 (11th Cir. 1997); *Moore v. District of Columbia*, 907 F.2d 165, 171 (D.C. Cir. 1990); *see also B.K. Toms River Bd. of Educ.*, 998 F. Supp. 462, 471 (D.N.J. 1998) (citing with approval *Zipperer*, 111 F.3d at 851). *But see King v. Floyd Cty. Bd. of Educ.*, 228 F.3d 622, 626 n.4 (6th Cir. 2000)

Under § 1415(i)(2), parties "aggrieved by the findings and decision made" by the hearing officer may bring a civil action within "90 days from the date of the decision of the hearing officer." 20 U.S.C. § 1415(i)(2)(B). In contrast, "prevailing parties" may bring a civil action under § 1415(i)(3) to recover reasonable attorneys' fees. *Id.* § 1415(i)(3)(B). Courts, recognizing these two distinct causes of action, have also held that a different statute of limitation applies to actions brought under § 1415(i)(3).[2] *See, e.g.*, *D.G.*, 806 F.3d at 317; *Zipperer*, 111 F.3d at 851.

## II.

The facts of this case are unique. Santino is a student eligible for special education services under IDEA. (Stipulated Facts ¶ 5, ECF No. 17.) In October 2013, Santino enrolled in the eighth grade at the Walter D. Palmer Leadership and Learning Charter School, an LEA that received federal financial assistance under IDEA. (*Id.*

---

[2] The Department did not raise a statute of limitations argument in its motion for summary judgment. At oral argument, the Department tacitly conceded that the ninety-day limitations period of 20 U.S.C. § 1415(i)(2)(B) does not apply to actions brought under 20 U.S.C. § 1415(i)(3) and explained that it did not brief the statute of limitations issue because the law was not clear. (Tr. of Hr'g, at 13:1–6). The Court agrees that the ninety-day limitations period does not apply here. The Third Circuit has not decided this issue, but a circuit split has developed over whether IDEA fee shifting should have a long or short statute of limitations. *Compare Meridian Joint Sch. Dist.*, 792 F.3d 1054, 1064 n.9 (9th Cir. 2015) (finding three year statute of limitations likely applied to attorneys' fee claims under IDEA); *Zipperer v. Sch. Bd.*, 111 F.3d 847, 851 (11th Cir. 1997) (adopting a four year statute of limitations applied to attorneys' fee claims under IDEA) *with King v. Floyd Cty. Bd. of Educ.*, 228 F.3d 622, 626 n.4 (6th Cir. 2000) (holding that a thirty day statute of limitations applied to attorneys' fee claims under IDEA); *Powers v. Ind. Dep't of Educ.*, 61 F.3d 552, 556 (7th Cir. 1995) (same). Two district courts in this circuit have concluded that the limitations period is at least two years. *See Murphy v. Girard Sch. Dist.*, 134 F. Supp. 2d 431, 436 (W.D. Pa. 1999); *B.K. v. Toms River Bd. of Educ.*, 998 F. Supp. 462, 473 (D.N.J. 1998). Because no party briefed this issue and because the Court could find no authority to suggest the limitations period here is jurisdictional, the Court considers the issue waived by the Department.

¶¶ 9–11.) His father Joseph requested that Santino receive an independent educational evaluation to determine his current level of functioning. (*Id.* ¶¶ 11, 13.) In March 2014, Palmer approved the request for an evaluation at public expense and in April 2014, Palmer's CEO David Weathington acknowledged in writing that it was Palmer's obligation to pay for Santino's evaluation. (*Id.* ¶¶ 11, 13 & 14.) Santino received an independent neuropsychological evaluation from Dr. Kara Schmidt in August 2014, (*id.* ¶ 15), and Dr. Schmidt submitted an invoice to Palmer totaling $4,000, (*id.* ¶ 16).

Despite agreeing in advance to pay for this evaluation, Palmer ultimately refused to do so. (*Id.* ¶¶ 16, 17.) Joseph filed a due process complaint against Palmer on December 4, 2014 seeking full payment for the evaluation. (*Id.* ¶ 17.) Later that month, after all parties submitted filings but before the hearing officer entered a decision, Palmer permanently closed due to financial difficulties. (*Id.* ¶ 23.) On January 12, 2015, the hearing officer ruled in Joseph's favor, ordered Palmer to pay $4,000 and declared Joseph the prevailing party. (*Id.* ¶ 22.) Palmer, now closed due to insolvency, did not pay for Dr. Schmidt's services.

In June 2015, Joseph's counsel notified the Department of Palmer's failure to pay. (*Id.* ¶¶ 24–25.) Counsel requested that the Department, pursuant to its responsibilities under IDEA to ensure that all children with disabilities receive a free appropriate public education, pay the $4,000 for Santino's evaluation and the accrued attorneys' fees of $6,322.55. (*Id.* ¶¶ 25–26.) The Department agreed to pay for Santino's evaluation but refused to pay the attorneys' fees. (*Id.* ¶¶ 27, 29.)

# III.

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Id.* at 252. Summary judgment is appropriate where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

Moreover, "[t]he rule is no different where there are cross-motions for summary judgment." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008). "When confronted with cross-motions for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Perez v.*

7

*Kwasny*, 159 F. Supp. 3d 565, 569 (E.D. Pa. 2016) (quoting *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003)).

## IV.

### A.

Under the "American Rule," parties are ordinarily responsible for their own attorneys' fees, regardless of the outcome. *See generally Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015). In fact, there is "a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994).

"[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citation omitted). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989). Supreme Court precedents "thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *see also John T. ex rel. Paul T. v. Del. Cty. Intermediate Unit*, 318 F.3d 545, 555 (3d Cir. 2003) (applying *Buckhannon*, 532 U.S. 598, to IDEA fee shifting).

The due process hearing officer ordered Palmer to pay Dr. Schmidt $4,000 and declared Plaintiff the prevailing party. (Due Process Order, at 3, ECF No. 17-3.)

8

Plaintiff is undoubtedly the prevailing party against Palmer, as the due process order affected a "material alteration of the legal relationship" between Plaintiff and Palmer. If Palmer was still a viable entity, Plaintiff could ask the Court to order Palmer to pay his reasonable attorneys' fees under § 1415(i)(3).

Plaintiff did not, however, prevail against the Department. *Cf. Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("[L]iability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant."). The Department was not a party to the due process hearing. Indeed, the hearing officer specifically ordered the following: "Walter D. Palmer Leadership Learning Partners Charter School shall pay Dr. Kara Schmidt the amount of $4,000.00 for completion of the Independent Educational Evaluation." (Due Process Order, at 3, ECF No. 17-3.) The legal relationship between Plaintiff and the Department did not change as a result of this order.

This case is unlike those where the Department was in fact a party to the due process proceeding. In *R.V. v. Rivera*, 220 F. Supp. 3d 588 (E.D. Pa. 2016), after Palmer closed, a student's mother filed two IDEA due process complaints (one against Palmer and one against the Department) alleging that her child was denied a free appropriate public education. *Id.* at 589–90. The mother later sued in federal court challenging the decision of the hearing officer that her claim against the Department was moot; she also asked the court to order attorneys' fees against the Department. The court denied the Department's motion to dismiss the claim for attorneys' fees reasoning that "once an SEA is properly subject to an IDEA due process complaint, it risks a judgment

9

imposing attorneys' fees should its opponent attain prevailing party status." *Id.* at 595. Here, unlike in *R.V.*, the Department was not properly subject to an IDEA due process complaint.

The Department paid $4,000 for Santino's evaluation after Palmer closed because, under IDEA, it has the ultimate responsibility to ensure every disabled child receives a free appropriate public education. *See Charlene R.*, 63 F. Supp. at 513; *see also* 20 U.S.C. §§ 1412(a)(11)(A), 1413(g)(1); *Krulle*, 642 F.2d 687, 696 (3d Cir. 1981). But IDEA, not the due process hearing, compelled this result; the due process hearing did not create a "material alteration of the legal relationship" between Plaintiff and the Department.

## B.

Plaintiff relies almost entirely on *Charlene R. v. Solomon Charter School*, 63 F. Supp. 3d 510 (E.D. Pa. 2014), though counsel acknowledged at oral argument that the case "doesn't get [the Plaintiff] completely home . . . because it didn't have to decide this issue." (Tr. of Hr'g, at 50:2–8.) In *Charlene R.*, the parents of a disabled student filed a due process complaint against Solomon charter school alleging that their child was denied a free appropriate public education. *Id.* at 512. Before a due process hearing officer could rule on the complaint, Solomon and the parents entered into a resolution agreement pursuant to 20 U.S.C. § 1415(f)(1)(B). Solomon closed two weeks later and failed to make payments under the agreement. The parents thereafter sued Solomon and the Department and sought to have the court enforce the resolution agreement against the Department. *Id.*

The Department moved to dismiss the parent's suit, arguing, *inter alia*, that it was not a party to the resolution agreement. The court denied the Department's motion. After establishing that the SEA is ultimately responsible for ensuring that disabled children receive a free appropriate public education, the court concluded that if discovery revealed that the SEA was insolvent, the child would be denied a free appropriate public education and therefore IDEA and case law would support ordering the SEA to comply with the resolution agreement. *Id.* at 519.

*Charlene R.* held that an SEA "retains primary responsibility to ensure that all children with disabilities receive the education that is their right under the IDEA." 63 F. Supp. 3d at 513. It did not hold that the Department must indemnify all liabilities for failed charter schools. Instead, the court expressly limited its ruling and stated that whether an SEA is liable for attorneys' fees was "not a comparable inquiry" to the issue before it, namely, whether an SEA is ultimately responsible for providing a free appropriate public education. *Id.* at 515 n.2.

## C.

Plaintiff also argues that attorney fee shifting is integral to a free appropriate public education under IDEA. He contends that while parents are not required to hire an attorney under any of the three proceedings discussed above (due process, state complaint or formal mediation), in practice, an attorney is necessary for success, and IDEA's attorney fee shifting provisions provide families with access to effective counsel. As a practical matter, Plaintiff's position is understandable. As a legal matter, it is unsupported.

Plaintiff quotes out of context an unpublished, out-of-circuit, district court decision, *P.D. v. Mt. Vernon Comm. Sch. Corp.*, 2008 WL 1701877 (S.D. Ind. Apr. 10, 2008), to purportedly show that at least one court has held that fee shifting is integral to a free appropriate public education. *P.D.*, however, did not so hold—Plaintiff repeatedly quotes or cites the court's *description* of the plaintiff's argument as if it were the court's holding.

In *P.D.*, while the court did acknowledge general public policy purposes behind the fee-shifting provisions in IDEA—including those raised by the Plaintiff here—it clarified that these considerations were "not the only public policy at stake." *Id.* The court then explained that "unlike other civil rights cases that often have broader implications for other cases, IDEA suits usually involve only very targeted disputes over the fine-tuning of IEPs affecting only one student in one district." *Id.* (quotation omitted). And because "the financial demands on public school districts are getting harder and harder to meet" courts should pay "close attention" to "requests for attorneys' fees which drain taxpayer-funded districts of their ability to meet other needs." *Id.* (quotation omitted). Far from supporting Plaintiff's contention that fee shifting is integral to a free appropriate public education, *P.D.* articulates reasons why courts should carefully review requests for attorneys' fees.

Congress did not regard fee shifting as integral to a free appropriate public education under IDEA. The statute provides for discretionary fee shifting—a court "in its discretion, may award reasonable attorneys' fees."[3] 20 U.S.C. § 1415(i)(3)(B). If, as Plaintiff contends, fee shifting was *integral* to a free appropriate public education,

---

[3] Of course, the Court may award fees in its discretion *only* to a party who first qualifies as a prevailing party. *See supra* section IV.A.

12

Congress would have mandated it as it has done in countless other federal statutes. *See, e.g.*, Fair Labor Standards Act, 29 U.S.C. § 216(b) ("The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (emphasis added)); Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) ("[A] court *shall award to a prevailing party* other than the United States fees and other expenses . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified." (emphasis added)); Clayton Act, 15 U.S.C. § 15(a) ("[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court . . . and *shall recover* threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." (emphasis added)); Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(3); Truth in Lending Act, 15 U.S.C. § 1640(a)(3). That IDEA's fee shifting is discretionary indicates that Congress did not believe fee shifting was integral to the law's guarantee of a free appropriate public education. IDEA's structure confirms this. The statute provides extensive procedural safeguards, including various avenues to settle disputes under IDEA: a due process hearing, a state complaint and formal mediation. While counsel may be beneficial in navigating all of these routes, IDEA does not recognize the necessity of legal representation, much less guarantee payment for it.

V.

The Supreme Court recently emphasized that IDEA does not "effectively empower[ ] judges to elaborate a federal common law of public education." *Endrew F.*,

137 S. Ct. at 998. The circumstances giving rise to this dispute may not have been reasonably foreseeable to the legislative branch when IDEA was written, but the Court cannot fashion a remedy Congress did not provide or perhaps even contemplate. Plaintiff did not prevail against the Department at the due process hearing. While IDEA requires SEAs like the Department to provide a free appropriate education when a charter school fails, the law does not provide for fee shifting under the unique facts of this case.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.